IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **DEXTER LAMAR PRIDGEON,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-01178-O-BP |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Dexter Pridgeon applied for Supplemental Security Income ("SSI") under the Social Security Act ("SSA"), but the Commissioner denied the application because of Pridgeon's substance use disorder. Pridgeon claims substantial evidence does not support this outcome. Finding no reversible error, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

I.  **BACKGROUND**

Pridgeon applied for SSI under Title XVI of the SSA in 2018, claiming disability because of tuberculosis. Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 25-1 at 169-176, 198. It is undisputed the sixty-two-year-old Pridgeon suffers from additional severe impairments, including gout, hypertension, chronic kidney disease, hepatitis C, and cervical, thoracic, and lumbar spine disorders. *See* Tr. 14.

The Commissioner denied Pridgeon's application initially and upon reconsideration. *Id.* at 82, 93. Seeking to challenge the Commissioner's denial, Pridgeon requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 112-14. The ALJ conducted the hearing (*id.* at 39-73)

and affirmed, explaining in a twenty-three-page decision that Pridgeon would be disabled but-for his "substance use disorder." *Id.* at 12-34. The Social Security Appeals Council denied further administrative review. *Id.* at 1; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review."). Pridgeon filed this civil action seeking judicial review under 42 U.S.C. § 1383(c)(3). ECF No. 1. He claims substantial evidence does not support the Commissioner's decision. ECF No. 27.

## II.     STANDARD OF REVIEW

Title XVI of the SSA governs the SSI program. *See* 42 U.S.C. §§ 1381-1383f. Claimants seeking benefits must prove they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for [SSI]"). A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). Third, disability exists if the

impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* § 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* § 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations." *Id.* § 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* § 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

Even if the sequential process described above would compel a disability finding, the ALJ must still find the claimant not disabled if "alcoholism or drug addiction" ("DAA") would "be a contributing factor material to the [ALJ's] determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Accordingly, the ALJ must complete a supplemental "special process" where § 1382c(a)(3)(J) applies. *Anderson v. Colvin*, No. 3:12-cv-1039-L-BF, 2013 WL 4774638, at *3 (Aug. 23, 2013), *rec. adopted*, 2013 WL 4774638 (N.D. Tex. Sept. 6, 2013).

Section 1382c(a)(3)(J) applies where the ALJ finds the claimant disabled and has "medical evidence" of his DAA. 20 C.F.R. § 416.935(a). The ALJ must then determine whether the claimant's DAA is a contributing factor material to the disability determination. *Id.* Materiality measures whether the claimant would be disabled if he stopped using drugs or alcohol. *Brown*, 192 F.3d at 499 (citing § 416.935(b)(1)). The claimant "bears the burden of proving that [DAA] is not a contributing factor material to [his] disability." *Id.* at 498. If DAA is a contributing material factor, then the claimant is not disabled. § 416.935(b)(2)(i). This Court summarizes the inquiry as a two-pass analysis:

4

> If, in the first-pass analysis, the ALJ determines that the plaintiff is disabled and that there is "medical evidence" of "drug addiction or alcoholism," the ALJ must then proceed with a second-pass analysis to determine if the claimant would be found disabled if he or she stopped [using] drugs or alcohol.

*Reynaldo Flores R. v. Kijakazi*, No. 6:20-cv-085-H-BU, 2022 WL 325747, at *1 (N.D. Tex. Feb. 3, 2022).

### III.   ANALYSIS

The ALJ properly completed the two-pass analysis here. *See id.* During his first pass, the ALJ applied the sequential evaluation process and found Pridgeon disabled. Tr. 14-27. But citing evidence of Pridgeon's "substance use disorder," the ALJ proceeded with the second pass, during which he determined Pridgeon's non-DAA RFC:

> If [Pridgeon] stopped the substance use, [Pridgeon] would have the [RFC] to perform medium work as defined in 20 CFR [§] 416.967(c) except he can lift and/or carry up to 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk for about 6 hours in an 8-hour workday. He can sit for about 6 hours in an 8-hour workday. He can frequently but not constantly be exposed to pulmonary irritants such as fumes, dusts, odors, and gasses.

*Id.* at 28. Using this RFC, the ALJ found Pridgeon could perform PRW as a janitor as well as other jobs that exist in significant numbers in the national economy, like "Hand packager," "Warehouse worker," and "Laundry worker." *Id.* at 32-34. Because Pridgeon could still work if he stopped his DAA, the ALJ concluded Pridgeon's "substance use disorder is a contributing factor material to the determination of disability" and thus Pridgeon "has not been disabled within the meaning of the [SSA]." *Id.* at 34.

Pridgeon asserts two points of error: (A) the ALJ incorrectly applied the DAA statute and regulation because there "has been no diagnosis of either drug addiction or alcoholism"; and (B) substantial evidence does not support the ALJ's second-pass RFC determination because he "failed to include a medical opinion with regard to all of the significant medical evidence of record." ECF No. 27 at 2-3. The Court should overrule both points.

### A. The ALJ correctly applied the DAA statute and regulation because there is substantial medical evidence of Pridgeon's DAA.

An ALJ need not have evidence of a DAA diagnosis before he can proceed from the first-to second-pass analysis. *See Reynaldo Flores R.*, 2022 WL 325747, at *1. The word "diagnosis" does not appear in § 1382c(a)(3)(J) or the statute's accompanying regulation, 20 C.F.R. § 416.935. Instead, the statute and regulation apply more broadly where the ALJ has "medical evidence of" the claimant's DAA. *Id.* § 416.935(a); *see also Marciszewski v. Colvin*, No. 7:14-cv-00059, 2015 WL 4945861, at *8 (N.D. Tex. July 17, 2015) (explaining the ALJ must base his DAA determination on "medical evidence"), *rec. adopted*, 2015 WL 4945861 (N.D. Tex. Aug. 19, 2015). And here, there is substantial medical evidence of Pridgeon's DAA.

In March 2018, Pridgeon reported using cocaine one-to-two times per week and drinking three packs of beer daily. Tr. 15 (citing Tr. 355). In November 2018, he reported drinking a six-pack of beer at least four times per week. *Id.* at 16 (citing Tr. 484). In January 2019, Pridgeon received an alcohol intoxication diagnosis (*id.* at 17 (citing Tr. 665, 669)) and tested positive for cocaine usage. *Id.* at 18 (citing Tr. 1207). In May 2019, he indicated drinking alcohol daily and using cocaine two-to-four times per week. *Id.* (citing Tr. 744, 874, 879). In July 2019, a hospitalized Pridgeon received a polysubstance-abuse diagnosis after drug screening revealed positive test results for cocaine and cannabinoid. *Id.* at 19 (citing Tr. 1071, 1080). Another cocaine positive test result followed in October 2019. *Id.* at 20 (citing Tr. 1100, 1107).

Pridgeon submits not having "been diagnosed as addicted to illegal drugs" or "as suffering from alcoholism," thus precluding any DAA finding. ECF No. 27 at 8. Yet he concedes having been "diagnosed" with "substance abuse disorder" and "as being dependent upon alcohol," though he maintains these diagnoses are distinct from a DAA diagnosis. *Id.* at 6 (citing Tr. 359, 465), 7 (citing Tr. 662, 685). Any distinction is without a difference. *See, e.g.*, *Reynaldo Flores R.*, 2022

WL 325747, at *2 (finding sufficient "medical evidence" in part where it was "undisputed that plaintiff had a history of substance abuse—including cocaine and alcohol"). Because there is substantial medical evidence of DAA, the ALJ correctly applied § 1382c(a)(3)(J) and proceeded to his second-pass analysis. The Court should overrule Pridgeon's first point.

### B. Substantial evidence supports the ALJ's second-pass RFC determination.

During his second-pass analysis, the ALJ properly determined Pridgeon's RFC to perform medium work. He found the medical opinions of two state agency medical consultants ("SAMC") "persuasive." Tr. 32. Both assessed Pridgeon's RFC for medium work and found him not disabled. *Id.* at 78-81, 89-92; *see generally Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("[A]n ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions.").

The SAMCs proffered their opinions without observing any evidence of Pridgeon's DAA. *See* Tr. 80, 92 ("There is no evidence of any substance abuse disorder/DAA issue."). It follows the ALJ could weigh their opinions as probative of Pridgeon's non-DAA RFC and, by extension, probative of the ultimate materiality inquiry. *See* 20 C.F.R. § 416.935(b)(1); *Snodgrass v. Colvin*, No. 11-cv-0219-P, 2013 WL 4223640, at *3 (N.D. Tex. Aug. 13, 2013) (explaining the "relevant question" for the ALJ "is whether, in the absence of drug and alcohol use, the claimant improves to such a degree that [he] is no longer disabled"). This Court cannot reweigh the SAMCs' medical opinions, *Harris*, 209 F.3d at 417, or invade the ALJ's province to determine Pridgeon's RFC. *Ripley*, 67 F.3d at 557 ("The ALJ is responsible for determining an applicant's [RFC].").

Pridgeon insists the ALJ could not rely on the SAMCs because they authored their opinions before some 656 pages of evidence were added to the administrative record. ECF No. 27 at 9-14. He indicates the additional pages "contain significant clinical and laboratory evidence as to the severity of [Pridgeon's] medical conditions" including his "chronic gout," "recurring edema," and

7

"cervical and lumbar spine" issues. *Id.* at 10, 13. Citing Social Security Ruling 96-6p and *Brister v. Apfel*, 993 F. Supp. 574, 577 n.2 (S.D. Tex. 1998), he contends the ALJ had to obtain an "updated medical opinion" about this additional evidence before he could determine an RFC that substantial evidence supports. ECF No. 27 at 11-13; *see also Williams*, 355 F. App'x at 832 n.6. Pridgeon's contention is without merit for two reasons.

First, the Social Security Rulings are non-binding authorities, *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), and Pridgeon acknowledges Ruling 96-6p in particular "has been replaced by subsequent rulings." ECF No. 27 at 11. Second, *Brister* affords the ALJ discretion to decide whether an updated medical opinion is necessary upon receiving additional medical evidence that postdates the SAMCs' opinions. *See* 993 F. Supp. at 577 n.2 (calling for an updated opinion only when "additional medical evidence is received that *in the opinion of the ALJ* may change the [SAMCs'] findings"); *see also Brooks v. Astrue*, No. 4:09-cv-2806, 2011 WL 1231605, at *10 (S.D. Tex. Mar. 31, 2011) ("SSR 96–6p and the court in *Brister* leave the decision to obtain an updated medical opinion to the discretion of the ALJ."); *Burns v. Astrue*, No. 4:12-cv-3435, 2015 WL 136558, at *14-16 (S.D. Tex. Jan. 9, 2015) (discussing *Brister*, 993 F. Supp. at 577 n.2) (finding the "ALJ was not required to order any further examinations or medical opinions" even where "a large portion of [the claimant's] medical records (over 400 pages) were submitted after the [SAMCs] formulated their opinions").

The ALJ properly exercised his discretion here. Medical evidence from the entire administrative record—including the additional pages at issue (*see* ECF No. 27 at 10 (Pl.'s Br.) (citing Tr. 657-1312))—comported with the SAMCs' opinions. He explained the SAMCs' opinions "are supported by the relatively mild abnormalities found on imaging as well as [Pridgeon's] periodic physical examination abnormalities," and they "are also consistent with

8

[Pridgeon's] conservative and effective treatment as well as his non-compliance with treatment and reported functional abilities." *Id.* at 32; *see also* 20 C.F.R. § 416.920c (stating the ALJ will explain how persuasive he finds the medical opinions in the record). The ALJ's RFC discussion cited substantial medical evidence from the additional pages to support this explanation. *See* Tr. 29-31.

For example, Pridgeon's chest films revealed minimal abnormalities. *See id.* at 29 (citing Tr. 1141, 1210). Physical exams noted his hands had a normal range of motion and only mild joint tenderness. *See id.* (citing Tr. 1251, 1286). Exams also indicated the following: "normal muscle bulk," "alert, strength and sensation intact bilaterally," "normal reflexes," "normal [neck] range of motion," and "[N]ormal [heart] rate" with "[n]o respiratory distress." *See id.* at 31 (citing Tr. 872, 1075, 1247, 1251, 1286). Pridgeon reported feeling "well" and "pretty good" to his treatment providers. *Id.* at 30 (quoting Tr. 1201, 1240). He also got off his medication, including in one instance for three months. *Id.* (citing Tr. 1245).

Finally, the additional pages, just like the entire record, contained "no evidence of any subsequent hospitalizations, any surgeries, or any other emergency room visits, or urgent care clinic visits for any of his chronic conditions . . . in the absence of substance abuse." *See id.* As the additional evidence comported with the SAMCs' opinions that Pridgeon has the RFC to perform medium work, the ALJ enjoyed discretion in declining to obtain an updated medical opinion for that evidence. *See also Steven T. W. v. Berryhill*, No. 3:18-cv-00030-BT, 2019 WL 1429347, at *6 (N.D. Tex. Mar. 28, 2019) (finding substantial evidence supported RFC determination that was based on "the [SAMCs'] opinions to some extent, the objective medical record, and the record as a whole").

9

The Court's review remains highly deferential to the ALJ. *Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427, at *1 (5th Cir. Jan. 11, 2022). The Court will only reverse the ALJ's decision if "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (explaining the "harmless error rule"). Even if the ALJ somehow erred here, there is no indication any error harmed Pridgeon's substantial rights.

It is Pridgeon's burden to prove DAA is immaterial to his disability status. *See Brown*, 192 F.3d at 498-99. He "must introduce evidence that supports a finding" he would remain disabled even absent DAA. *Id.* at 499; *see also Marciszewski*, 2015 WL 4945861, at *9 ("[Plaintiff] had opportunities at the hearing and through her brief and reply brief to offer evidence concerning the immateriality of DAA to her disability."). Pridgeon does not proffer or identify any medical opinions contrary to the SAMCs'. *See Snodgrass*, 2013 WL 4223640, at *4, 11-12 (finding reversible error where plaintiff carried her burden through medical opinion evidence). In fact, Pridgeon not once acknowledges his burden or explains how the evidence renders him disabled even absent his DAA. *See* ECF Nos. 27, 29 (Pl.'s Br. & Reply Br.); *see also* ECF No. 28 at 7-8 (Def.'s Br.) (citing *Brown* and discussing the burden of proof).

Merely attacking the ALJ's evidentiary analysis of DAA and materiality is not enough to carry his burden of proof and establish harmful error. *See Marciszewski*, 2015 WL 4945861, at *9 (citing *Brown*, 192 F.3d at 498) (discussing plaintiff who "[r]ather than attempt to meet this burden" instead "focuse[d] her arguments on the ALJ's perceived lack of evidence to support her DAA decision"). The Court thus should overrule Pridgeon's second point because the ALJ properly determined the RFC and Pridgeon does not otherwise show harmful error.

## IV. CONCLUSION

Substantial evidence supports the ALJ's first-pass DAA finding and second-pass RFC determination. By extension, the ALJ properly concluded DAA is a contributing factor material to Pridgeon's disability, rendering Pridgeon not disabled under the SSA. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on April 1, 2022.

_Hal R. Ray, Jr._
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE